UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEANETTE R. COLEMAN,

        Plaintiff,        Case No. 08-cv-13276
vs.        DISTRICT JUDGE ROBERT H. CLELAND
        MAGISTRATE JUDGE STEVEN D. PEPE

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
==========================/

**REPORT AND RECOMMENDATION**

**I.    BACKGROUND**

Jeanette R. Coleman brought this action under 42 U.S.C. § 405(g) and §1383(c)(3) for judicial review of the Commissioner's final decision that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act or Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act. Both parties have filed motions for summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

    **A.    Procedural History**

Plaintiff filed an application for DIB and SSI in July 2008, alleging disability due to carpal tunnel syndrome and back impairments since February 2003 (R. 50A, 55, 184). After Plaintiff's application was denied upon initial review, an administrative hearing was held on April 18, 2006, at which Plaintiff was represented by his present attorney,

1

Mikel E. Lupisella (R. 192). Vocational Expert ("VE") Robert Raschke, M.A., also testified (R. 208).

In a January 26, 2007, decision, Administrative Law Judge ("ALJ") David R. Mazzi found that Plaintiff was not disabled because, despite her impairments, she could perform a significant number of limited light-level jobs identified by the vocational expert (R. 18-25). On June 2, 2008, the Appeals Council denied review of the ALJ's decision (R. 5-7).

### B.     Background Fact[1]

Plaintiff was 47 years old at the time of the ALJ's decision (R. 23, 50A). She graduated from high school and completed two years of college (R. 23, 61). She worked in the past as a production welder for General Motors (R. 23, 56, 197).

#### 1.     *Plaintiff's Testimony and Statements*

Plaintiff stopped working due to problems with her back and hands (R. 200). She indicated that back pain prevented her from sitting or standing for too long. Plaintiff was more comfortable standing than sitting, and could sit or stand for fifteen to thirty minutes each before needing to change positions (R. 200-01). She had previously reported that she could only walk for about an hour before needing to rest (R. 74). Plaintiff's primary manual limitation was limited ability to grip (R. 201).

Plaintiff treated her complaints with Tylenol (R. 202). She drove, but testified that she engaged in limited daily activities, and was unable to cook or perform

---

[1] Plaintiff advances a single argument on appeal. Plaintiff contends the ALJ failed to afford sufficient weight to treating physician Dr. Raffee's opinion that she was: unable to perform any bending or twisting; unable to use air guns or vibrating tools; and limited in her ability to push or pull with her arms or legs. To the extent possible, the facts and argument presented herein are limited to those necessary to respond to Plaintiff's argument.

housework (R. 69-71, 203, 207).  She said problems with her hands occasionally made it difficult for her to perform self care activities such as brushing her hair or putting in earrings (R. 70, 206-07).  She visited her mother regularly and walked for exercise when she felt like it (R. 72).

### 2.   *Medical Evidence*

Medical records show that Plaintiff has complained of back pain since a March 2002 injury at work (R. 55, 59, 97).  Treatment records reveal that Abdullah Raffee, M.D.[2], Plaintiff's general practitioner, treated Plaintiff since 2002 for complaints including back pain and numbness and tingling of her hands (R. 132-46).

In December 2002, Plaintiff's treating physician Raffee referred her to orthopedic surgeon David A. Fernandez, M.D. (R. 99-102).  Plaintiff told Dr. Fernandez that her back pain was exacerbated by standing, walking or stairs, but not by sitting, lifting or bending.  Plaintiff exhibited normal posture and gait, and was able to walk on her toes and heels and bend forward and touch her toes without pain.  She complained of mild pain upon extension and left side bending, but twisting was pain-free.  Dr. Fernandez reported that physical and neurological examination was otherwise unremarkable.  Plaintiff expressly denied any lumbar pain, saying that all of her pain was located in the mid-thoracic area.  Dr. Fernandez interpreted previous diagnostic testing, including a July 2002 EMG or Plaintiff's wrists and a November 2002 MRI of her thoracic spine, as indicative of mild carpal tunnel syndrome but no spinal abnormality.  Dr. Fernandez recommended that Plaintiff treat her complaints with non-steroidal anti-inflammatory medication.

---

[2] 2In his decision, the ALJ incorrectly refers to Dr. Abdullah Raffee as "Dr. Abdullah" (R. 21-22 citing Exhibits 6F, 11F, 12F).

3

In January 2003, Dr. Raffee reported that he was renewing Plaintiff's work restrictions to preclude bending, twisting, or lifting greater than fifteen pounds (R. 144). The following month Dr. Raffee reported that Plaintiff was unable to tolerate her job as a welder.

Neurologist Jeffrey R. Levin, M.D., examined Plaintiff in February 2003, at which time Plaintiff complained of low back pain radiating to her left leg with numbness of her left big toe (R. 104). An MRI of Plaintiff's lumbar spine revealed "mild" and "minimal" abnormalities (R. 106). Dr. Levin reported the impression of left carpal tunnel syndrome and possible L5 radiculopathy on the left (R. 105). Two months later, Dr. Levin reported the results of EMG testing and MRI imaging, and reported his impressions as bilateral carpal tunnel syndrome which was worse on the right, and cervical and lumbar radiculopathy related to spinal disc abnormalities (R. 103).

Dr. Raffee referred Plaintiff to a specialist, Dong W. Ohm, M.D., who administered cortisone shots to Plaintiff's left wrist and performed surgical decompression of Plaintiff's right wrist in September 2003 (R. 109, 114, 144). Although doctors reported good results from Plaintiff's September 2003 surgery, the month after surgery Plaintiff continued to complain of pain, numbness and tingling in her wrists and fingers (R. 107).

State agency consulting physician Asha Gupta, M.D., reviewed the medical evidence of record in October 2003, and concluded that Plaintiff retained sufficient capacity to perform medium-level work that did not require more than occasional climbing (R. 117-26).

4

The record contains Dr. Raffee's records of treating Plaintiff thereafter through February 2005 (R. 132-37). In August 2004, Dr. Raffee commented that he had not seen Plaintiff for several months, and that she was "on disability from work because of bilateral carpal tunnel syndrome and left thoracic syndrome" (R. 136). Dr. Raffee's treatment records after August 2004 do not mention Plaintiff's upper extremities or back (R. 132-35). The record does not document that Dr. Raffee saw Plaintiff after February 2005. In March 2006, Dr. Raffee completed a form in which he described Plaintiff as unable to perform even sedentary work on an ongoing basis (R. 183). Dr. Raffee noted that Plaintiff should not use airguns, vibrating tools and that there were severe limitations in Plaintiff's ability to push or pull with the upper and lower extremities.

Plaintiff also complained of a sleep disorder and was prescribed medication for this complaint by Dr. Raffee. Her complaint was also considered to be associated with depression and Ambien was prescribed. Plaintiff was evaluated for a sleep disorder and diagnosed with obstructive sleep apnea with snoring, somnolence and insomnia (R. 128-130). The diagnosis of obstructive apnea was based mainly on Plaintiff's statements and formal diagnostic testing was recommended to confirm the diagnosis.

### 3. *Vocational Evidence*

VE Raschke indicated that Plaintiff's past work as a production welder for General Motors is generally unskilled and performed at the medium level of exertion (R. 209). According to Plaintiff, her job was at the light to medium levels of exertion at the semiskilled level. Based on the residual functional capacity constructed by the ALJ, VE Raschke testified that Plaintiff would not have the ability to perform the job of production welder.

The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, education and work experience who could perform light work which did not require that she lift more than 15 pounds, no forceful gripping, no climbing of ladders or scaffolds, and permitted her to alternate between sitting and standing every fifteen minutes. VE Raschke testified that such an individual could perform a significant number of sedentary-level assembly jobs in the regional economy including work as a shade assembler, with 120,000 such jobs existing in the national economy, after a 25% erosion of the occupational base (R. 210-11). The VE also identified laborer jobs including work as a masker of precision instruments, with 52,000 such jobs in the national economy, after a 25% erosion of the occupational base. Another job identified was a parking lot attendant, with 15,000 such jobs in the national economy after an 85% erosion of the job base.

The vocational expert testified that the addition of no more than occasional fine or gross manipulation with the hands to the hypothetical would eliminate all of the identified jobs (R. 212). All of the identified jobs would also be eliminated if the individual had to take a nap during the day, beyond normal breaks. In response to Plaintiff's counsel's questions, the VE indicated there would be no jobs available if the individual had to raise her feet to waist level or higher at unscheduled times for unpredictable amounts of time.

### 4. *ALJ Mazzi's January 26, 2007, Decision*

ALJ Mazzi found that Plaintiff met the insured status requirement of the Social Security Act on February 10, 2003, and remained insured through the date of his decision (R. 24). Moreover, Plaintiff had not engaged in substantial gainful activity since

February 10, 2003.  The ALJ further found the medical evidence establishes that Plaintiff has the following severe impairments: carpal tunnel syndrome, status-post bilateral carpal tunnel release, a low back impairment and thoracic pain.  The medically established hypertension and depression were not considered severe.  ALJ Mazzi found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 for any twelve month period.

After considering the evidence of record, the ALJ determined that Plaintiff's medical impairments could reasonably be expected to produce the alleged symptoms, but that the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms was not entirely credible (R. 22-23).   ALJ Mazzi noted the medical findings regarding the back pain were minimal and did not support the level of symptoms claimed.  Medical attention for the back pain had been based on symptoms and was conservative in nature.  According to Plaintiff, she took only Tylenol for her pain.  Plaintiff did undergo surgical repair of the left carpal tunnel syndrome with residual symptoms, but the ALJ opined that there is no evidence of ongoing medical evaluation indicating symptoms of a level that seriously compromises use of her hands and requiring continued aggressive care.  While Plaintiff indicated that her daily activities were significantly reduced and that she customarily goes to her mother's home for meals since she is unable to cook, Plaintiff nonetheless reported that she was able to drive and retained some ability to lift and carry.  In reports of daily activities, Plaintiff visited her niece, had her hair coiffed and visited her mother, each activity causing Plaintiff to be out of her home for extended periods.

As for the opinion evidence, the ALJ declined to give the opinion of Dr. Raffee controlling weight. He noted that Dr. Raffee's progress notes did not include clinical and laboratory findings to support the degree of limitation Dr. Raffee described (R. 22). ALJ Mazzi further noted that the medical evidence shows no significantly abnormal medical findings of a worsening of the medical disorders from January 2003 until March 2006 to explain the extensive loss of functional capacity.

ALJ Mazzi also considered the opinion of the state agency consulting physician that Plaintiff retained the ability for medium exertion with the preclusion of climbing. The ALJ gave limited weight to the opinion of the state agency consulting physician because he did not have access to Dr. Raffee's medical source statement or progress notes or to the hearing testimony. Based on the weight of the evidence, ALJ Mazzi modified that opinion to a more restrictive residual functional capacity.

The ALJ concluded that Plaintiff has the residual functional capacity to perform to perform light work, as defined at 20 C.F.R. 404.1 567(b), with additional restrictions as follows: the ability to lift and carry up to fifteen pounds, with a sit or stand option every fifteen minutes and a preclusion from power gripping and climbing (R. 24). The ALJ further concluded that Plaintiff has at least a high school education, is unable to perform any past relevant work, and should be considered a younger individual on the alleged onset date, which is defined as an individual aged 45-49. Given Plaintiff's age, education, work experience, and residual functional capacity, ALJ Mazzi concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform referring to the VE testimony and Medical Vocational Guidelines 202.21 and 202.22 (R. 25). Accordingly, it was the decision of ALJ Mazzi that Plaintiff has not been

under a disability within the meaning of the Social Security Act at any time on or before the date of his decision.

**II.    ANALYSIS**

    **A.    Standards of Review**

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects. A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform. *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray Plaintiff's physical and mental

impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the Plaintiff's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the Plaintiff."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

### B. Factual Analysis

In his motion for summary judgment Plaintiff contends the ALJ erred by improperly evaluating the medical evidence of record (Dkt. #8, pp. 6-11). Plaintiff argues that the ALJ's erroneous evaluation of the medical evidence led him to pose an inaccurate hypothetical question to the vocational expert (*id.*). Specifically, Plaintiff's sole argument is that the ALJ erred by failing to afford sufficient weight to the opinion of her treating physician, Dr. Raffee, that she was unable to perform any bending or twisting, unable to use air guns or vibrating tools, and limited in her ability to push or pull with her arms or legs (Dkt. #8, pp. 10-11, citing R. 144, 183).

Plaintiff identifies two pieces of evidence as support for her argument. The first is a January 2003 progress note from Dr. Raffee that states:

> She has been put off [work] because of carpal tunnel syndrome. She comes in now to renew her restrictions. No bending, no twisting, no lifting greater than 15 pounds.

(R. 144). The second report Plaintiff cites is a form Dr. Raffee completed in March 2006, in which he described her as unable to use air guns or vibrating tools, and severely

10

limited in her ability to use her upper or lower extremities for pushing, pulling or operating controls (R. 183).

### 1. Plaintiff's Treating Physician

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. The case law in this circuit has stated that if adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Social Security Administration as a matter of law. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The administrative decision could reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

Under the Social Security Administration regulations, the Commissioner will generally give more weight to the opinions of treating sources, but it sets preconditions for doing so. 20 C.F.R. §404.1527. The Commissioner will only be bound by a treating source opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. § 404.1527(d); *See also*, S.S.R. 96-2p.

Yet, the conclusion of whether a Plaintiff is "disabled" is a decision reserved to the Commissioner (R. 19). 20 C.F.R. §§ 404.1527(e)(1), (2), 416.927(e)(1), (2). And, "[w]e will not give any special significance to the source of an opinion on an issue reserved to the Commissioner." *Id*. at §§ 404.1527(e)(3), 416.927(e)(3). Here, the ALJ weighed Dr. Raffee's opinion in accordance with controlling law, and he reasonably determined Plaintiff could do a range of limited light work (R. 22). The regulations and case law recognize that the opinion of a physician, including a treating physician, is entitled to great weight only if it is supported by adequate medical data, including medical signs and laboratory findings, and does not conflict with other evidence. 20 C.F.R. § 404.1527(d)(2)(3)(4).

The ALJ expressly addressed Dr. Raffee's January 2003 and March 2006 reports, and explained that he afforded greater weight to the opinions of other doctors of record (R. 22). It was reasonable for the ALJ to afford greater weight to the reports of specialists such as Dr. Fernandez, an orthopedic surgeon, than Dr. Raffee, Plaintiff's general practitioner. 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). The ALJ also observed that Dr. Raffee's progress notes did not include clinical and laboratory findings to support the degree of limitation Dr. Raffee described. Dr. Raffee's January 2003 description of Plaintiff as unable to bend, twist, or lift more than 15 pounds, was made the month before Plaintiff's alleged onset of disability, at a time that she was taken off work from her medium-level welding job due to carpal tunnel syndrome (R. 144). During the remainder of 2003, Plaintiff received injections in one wrist, and

surgery on the other (R. 109, 114, 144). Although Plaintiff complained of numbness and tingling in her wrists and fingers following surgery, the record does not contain any other testing or examination results describing the severity of her condition following surgery.

In fact, after her surgery Plaintiff saw no doctor other than Dr. Raffee, and Dr. Raffee saw Plaintiff only a few times throughout 2004 and into 2005. Dr. Raffee's treatment records contain no mention of Plaintiff's upper extremities or back after August 2004 (R. 132-35). The record does not document that Dr. Raffee saw Plaintiff after February 2005. It was reasonable for the ALJ to observe that the record lacked sufficient clinical and laboratory records to support Dr. Raffee's March 2006 opinion as to work-preclusive limitations (R. 22, 183). Accordingly, the ALJ's reasonable weighing of this evidence should not be disturbed upon judicial review.

### 2. Plaintiff's Credibility

In assessing Plaintiff's functional capacity, the ALJ expressly found her subjective allegations of incapacitating symptoms and limitations not fully credible (R. 22-23). Subjective evidence is only considered to "the extent . . . [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion. *Kirk v. Secretary of health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons.  S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific.  The ALJ must say more than the testimony is not credible.  *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then, without analysis, summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain.  *Id*. at 1039.

Here, in reaching his decision to give Plaintiff's testimony and statements limited weight, the ALJ expressly considered appropriate factors including the objective medical evidence, medical opinion evidence, Plaintiff's treatment, her medications and her activities.  20 C.F.R. § 404.1529(c)(3), 416.929(c)(3).  The ALJ observed that the record contained no evidence of ongoing medical conditions that seriously compromised her use of her hands after her September 2003 surgery (R. 22-23).  Nor does Plaintiff identify any evidence of such compromise in her brief.  In addition, the ALJ reasonably accommodated Plaintiff's manual impairment by limiting her to work that did not involve power gripping (R. 21).

The ALJ acknowledged that Plaintiff complained of back pain, and sufficiently accommodated Plaintiff's low back complainants by limiting her to light and sedentary level work that permitted her to alternate between sitting and standing every fifteen minutes in order to avoid aggravating her back symptoms (*id*.).  Accordingly, the Commissioner satisfied his burden of identifying jobs that Plaintiff could perform despite

14

her impairments. And Plaintiff has failed to establish that she was unable to perform these jobs. Even if Plaintiff were limited to the extent Dr. Raffee described, Plaintiff has not shown that the jobs the vocational expert identified would require significant bending or twisting, or the use of air guns or vibrating tools.

### III.    RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.

15

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Dated: July 23, 2009                          s/ Steven D. Pepe
Ann Arbor, MI                                 United States Magistrate Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing ***Report and Recommendation*** was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 23, 2009.

                                              s/John Purdy
                                              Deputy Clerk